Good morning. The petitioner in this case, Ms. Louise Clees-Wallace, was removed for a reason. Could you address the finality question off the bat, because isn't it the case that the arbitrator remanded here, retained jurisdiction, and once the case was resolved again at the agency level, these arguments that you're making here now could have been made before the agency, before the arbitrator, and resulted in a final judgment. So what's the answer? Why is there a final judgment here? The arbitrator did remand the case and called her order interim, but that is an error. The issue before the arbitrator was whether Ms. Clees-Wallace violated paragraph 2C of the last chance agreement, and that issue has been finally and completely resolved. Finality doesn't require just a resolution of the issue. There are like a thousand cases that say that that doesn't make it final. But the removal here is improper. It's divested of legality. She should be put back to square one. Now the agency might decide to remove her again, of course, in a month or five years from now for some new reason. That is the case in every single employment case, but if that makes it not final that the agency can take a second or a third bite at the apple, no employment case will be final. What do you understand the arbitrator to have sent this issue back to the agency on? The question of whether there was a violation on December 6th. We have December 6th and December 7th, which are floating around in this case. By the time the case got to the arbitrator, apparently December 7th had somehow evaporated and we were left with December 6th. The 2C claim, which was the notice of removal, was predicated on 2C and not on 2D. Is she sending this case back for resolution of the 2D issue with respect to December 6th, or do you think she's sending it back for resolution of the December 7th issue, which was noted as a basis for removal as well? I believe it's the former. She's sending it back for a prompt determination of whether 2D is violated, referencing the leave taken on December 6th. You say because 2D was never in the notice of removal, it can't be part of this proceeding. Correct. Therefore, her remand was ultra-virus in effect. Correct, or functus officio. Functus officio is probably the more precise Latin. The agency might decide to proceed with removing her for 2D, but I would point out the oddity of that is she doesn't work there anymore. If the agency tries to issue a new and better worded removal letter, I guess it would be a little theoretical. I think that shows the odd... No, but it has a very practical impact. I take a non-theoretical impact in that I take it your position is if they should choose to go back and start again on 2D, or for that matter with December 7th, she nonetheless is entitled to back pay for the entire interim period. Yes. There's a lot of money at stake between a remand which would re-adjudicate 2D, which would not presumably require back pay, versus termination of the proceeding now and a new proceeding predicated on 2D or December 7th. I think this isn't that different than any removal case where if a removal is set aside, you get to go back to square one. Now, it may happen that the agency thinks it's a bad employee, they want to remove somebody again, again a month, five years from now. It doesn't mean they shouldn't be back to square one when the removal letter was itself. Let me ask you about that. With square one cases, I understand that if it's a simple case, we charge you with theft from petty cash, and ultimately the MSPB decides the case was not made by the agency, you go back, you get reinstated, and you get back pay. This situation is a little different, and that's what's puzzling me. Here, she was charged with two different instances, and arguably even more, with the background of AWOL. She's charged with at least December 6th and December 7th. December 7th is not pressed before the arbitrator. Does that mean that the agency then is in exactly the same positions they would be if they had never charged December 7th at all? Does it also mean where you have an alternative ground that you didn't put in an alternative legal basis for the conduct that you have involved that you can't press that on remand? If so, what case says that? I couldn't find any that are like this. They seem close because it's 2C or 2D, but it's really, I think, no different than saying the agency did not properly word its removal letter, 2C isn't a violation, but why don't you go back and see if maybe she committed theft. Maybe she misrepresented herself in some documents. I think the question was about the December 7th conduct. I'm interested in your answer to both, but the December 7th is one that I'm particularly interested in. I believe the agency withdrew that at the arbitration, and it is simply not part of the case anymore. Forever, and they can't resurrect it. Could they resurrect it if they went back and gave her her back pay and said, okay, December 7th, we never fully adjudicated that, now we're going to remove you based on December 7th. They issued a new removal letter based on the specification 2. I think they could try that again. We might have defenses to it. Even though it was in the initial removal letter. This is not a case that they didn't put. She had notice of it all along. For reasons that are completely baffling to me, the agency dropped that at the arbitration point, but are they entitled to say, we want to continue with that now that we've lost on the first issue? Right, so she did have notice of the December 7th issue, so if they tried to go back and say you had notice of that. What did they say when they dropped it? That I don't know. I don't think it's in the transcript. I assume it was off the book. It's in their brief before the arbitration. They just said. It's conceded they withdrew it, but I don't know what their thinking was on that. In terms of case law, I feel this case is much like the GOES case. The agency said someone breached the last chance agreement. This court said no breach occurred, and so it ordered reinstatement. Or like the Sullivan and the Ryder cases we cite, there were these due process problems. The court sets the removal aside and orders reinstatement. Suppose that you've got a case in which somebody is charged, to take my example, with theft from petty cash, and the agency in the removal letter asserts that offense of theft from petty cash, but then cites the wrong regulation that governs theft from petty cash. Nobody notices that until they get up to the MSPB or the arbitrator, and the arbitrator says, nope, you cited the wrong regulation. And the agency says, ah, okay. Do you think in that situation that the agency would be allowed, would be permissible under the law that we've developed on returning to status quo, for the agency just to proceed again without reinstatement and so forth on the original charge? Given that the charge itself, the conduct had been noted, it's just that the specification of the nature of the offense, the clause of the regulations had not. I think the issue would be what the defenses are. Did the employee have every chance to refute the charge? And if there's some new element in the regulations that the employee didn't know about, then it would be a problem. If the defense would be the same regardless, and I think the arbitrator said here, the defenses to a 2D specification would be different than to a 2C. And that's why there's a due process problem. So I think the government's opposition here all stems from what the issue is. And as we have said, the issue is whether she violated 2C of the last chance agreement. The government says it's whether her conduct, quote, breached the LCA, period, end quote. All their arguments stem from that. Maybe it's not final. Maybe the arbitrator appropriately held on to jurisdiction. But we think the issue is what's in the removal letter. Employees have to have notice of the charges against them. Are there no further questions? Okay. Thank you, Ms. Knapp. Thank you. Ms. Kidmiller? Good morning, and may it please the Court. We continue, of course, to urge this Court to dismiss this appeal as an improper interlocutory appeal. But before turning to that procedural question, I want to clarify a couple of factual points in the record that are important context for the arbitrator's decision, and I think help demonstrate why even if this Court were to reach the question whether remand was proper here, which, again, we don't think is properly before the Court, shows that that remand was proper and reasonable under these circumstances. First, the arbitrator did not, as the union asserts, view this as a case where the removal had been set aside. The arbitrator did not set aside the removal. To the contrary, the arbitrator found that the basic facts underlying the charge, which were always the same, they were failure, AWOL as a result of failure to bring in medical documentation supporting the December 6th leave request. The arbitrator found that those facts had all been proven, and this is at page 11 of the joint appendix. The arbitrator provides a full paragraph discussion, makes credibility determinations, and reaches the conclusion that those facts were proven. Also made a finding on the previous page, JA-10, that Ms. Cleese-Wallace understood she was required to submit such documentation. Nonetheless, recognizing that the agency, in its initial removal letter, cited the wrong provision, but did correct that provision while the matter was still pending before the agency, the arbitrator looked at this overall, said... When did they correct the provision? When did they add 2D? The agency agreed at the Step 3 grievance decision, after Ms. Cleese-Wallace came in and made her response to the removal letter. The agency agreed in its Step 3 decision letter, which begins at page 27 of the record, that the correct citation should have been 2D, and that, as the arbitrator affirmed, that the basic facts were the same here and affirmed. So, specifically, the 2D... I apologize. Let me just make sure I... Are you looking for the Step 3 grievance decision? Yes, Your Honor, and if you look at... JA-31 is where the discussion... Yes, Your Honor. JA-31. The deciding official... This is when the agency provided the first notice that it meant to have cited paragraph 2D. Both paragraphs 2C and 2D of the last chance agreement are in the 2D. documentation you have to bring in for a leave request. Now, an important difference between this and the typical Chapter 75 case is that Ms. Cleese-Wallace then, under the collective bargaining agreement, had an additional opportunity at this point in time to make another response to the agency while she was still in the grievance procedure. The collective bargaining agreement, so that page 45 of the record, explains that to the extent the court might accept Ms. Cleese-Wallace's view that the 2D, 2C distinction creates an entirely new issue. The collective bargaining agreement, this is a top right-hand paragraph at page 45 of the record, explains that the union will never be precluded from responding to new issues raised in a management decision at any step of the grievance process. Now, Ms. Cleese-Wallace did not, at that time, request an additional response. The agency didn't give her that, and that clearly disturbed the arbitrator, and the arbitrator found that, reasonably, Ms. Cleese-Wallace should have had an opportunity to respond, and that's what she has remanded this matter to have happen. And that's where the matter really should stand today instead of being before this court for Ms. Cleese-Wallace to present her arguments on 2D. Very importantly, the arbitrator found... It sounds like an argument on your part that the arbitrator made an error in remanding it and that under the collective bargaining agreement that wasn't necessary, that the 2D issue was raised and she had an opportunity to respond to that in the course of the arbitration and that no remand was necessary. Is that... Am I understanding that correctly? Well, the facts of that, yes. I'm not contesting that the arbitrator found harmful error. We accept that finding, but I think that's an important... provides additional important context to explain why the arbitrator remanded here, to give Ms. Cleese-Wallace that opportunity that the arbitrator felt she should have had. At page 13 of the appendix, this is the arbitrator's decision, the arbitrator found that factual questions are posed by this section referring to 2D and that those questions had been averted to at the hearing but not fully resolved. So I think that also explains that the arbitrator was looking for some more factual development on this issue, which she clearly contemplated would happen when this was remanded back to Step 3 of the grievance procedure. Let me ask you this question, and this is more directed to the finality, but it may have some application to both issues. Assume you had a very clean case in which I was charged with theft in the course of... from the agency, and in the course of which there was evidence of other thefts that I had committed other than the one I was charged with. It turns out that the MSPB finds that I was not guilty of the theft that was charged, it just wasn't proved. Can the MSPB then say, OK, go back and in the context of this single proceeding, go back and consider charging the other thefts? Would that be permissible, or would it be one and done? You made your claim that the one theft was listed in the removal letter. All you've done is press that one theft as your charge, and while there's evidence of these other thefts, that wasn't part of the claim. I have to be reinstated. Which would be the case? Well, I think we'd need to know two more facts. And first we'd need to know, did the employee understand that what was really being charged as well was not theft of the stapler, but theft of the computer, for example. So we're assuming harmful error here. The charge was very clear. It was theft of the stapler. And if the appellant was never on notice that the computer was also part of the charge, and if we're assuming that this is the typical Chapter 75 removal, the proposal notice, then yes, that is on all fours with the kinds of cases where the board has said there's been a harmful notice error here. Now, if that happens, and the board sends it back, and the employee says, wait a minute, you have no authority to send it back, you would agree they have no authority to send it back, right? In the situation where I think you just agreed to that, if there's only one clear charge, and the board sends it back for further proceedings, the employee could say, no, no, you can't do that, right? Right. The employee would come to us with that appeal and say, look what the board did. They can't do that, right? I think that's right. Right. And would that decision of the board be reviewable by us at that point because the agency had acted, whether you want to call it ultra-virus or functus officio, the MSPB had acted without authority doing something which they were not lawfully entitled to do. Would that be a final decision of the MSPB, reviewable by us? Right. I think my answer would be the same. The same as what? As it is in this case. You would say that, therefore, the MSPB can send it back, and the employee has to wait until that long proceeding which was totally unjustified and unwarranted is finished before that case ultimately gets resolved by us? I think there would still be an argument that the remand should go forward. Is that the government's position? No, I don't want to say that's firmly my position because I think that is a much tougher case. The problem is how do you distinguish between remands which are proper and remands which are improper? To say that there's a lack of finality if they exceed their authority in remanding, that potentially is a decision which encompasses a lot of remands where the argument is there was no authority to remand. I think this question focuses on what are the standards for finality, and Ms. Cleese-Wallace has not tried to fit this case into any kind of exception and hasn't pointed to cases, for example, saying that an improper remand somehow defeats the requirement of finality. Every time somebody's challenging a remand, they're arguing it's improper, right? Right, but certainly there are plenty of remands where that one party feels was horribly improper for some reason or the other, and yet it still falls within that general rule that a remand order will not be appealable. The arbitrator here teed up some specific factual issues for the agency to consider on remand. The reason the remand order isn't appealable is because of lack of finality, and there's a distinction in this instance, in the instance we're drawing the two examples. Right, well, this case is very different in some respects from the hypothetical because here the arbitrator clearly viewed this all to be part of the same underlying charge. Whether the agency cited 2C or 2D, she treated it all as part of the same issue. She identified the issue as one of breach, as the scores point out, remanded, retained jurisdiction, and I do want to make a... How is the, I think, 3.5 hours on 7 December abandoned, if you know? We don't have in the record why it was withdrawn, but it was withdrawn, and my understanding... But what's the consequence of that? Does that mean that that's over and done with and that can't be addressed on the remand? Yes, Your Honor, and the agency, my understanding, has no intention to try to revisit that issue. This remand would be focused entirely on the December 6th issue with respect to D. Yes, Your Honor, and particularly with the factual questions that the arbitrator noted. So, again, in context, and I do... Maybe it doesn't fit in this part of the argument, but I'd be remiss if I didn't at least mention that I do want to point out that the arbitrator did not find a due process, a constitutional due process violation here. She did find a harmful procedural error, and to the extent that our brief repeated and adopted that due process language, I apologize. That's not correct. The arbitrator didn't use the phrase due process. Instead, she cited Ward, this Court's decision in Ward, and discussed harmful error. And, of course, as Ward explains, if there has been a constitutional due process violation, then the harmful error analysis is inapplicable. So by proceeding to look at harmful error, we know that the arbitrator did not find a due process violation. So instead, in context, the arbitrator was viewing this as a situation where Ms. Cleese-Wallace understood what she was supposed to do. She hadn't done it. She was asked to bring in medical documentation supporting her leave request that took place on December 6th, and by the 28th of December still had not produced that documentation. That's when the agency converted it to AWOL. And the agency told Ms. Cleese-Wallace, while the matter was still pending before the agency, that it meant to cite 2D. So against that whole context, the arbitrator sent it back, and we'd ask that this Court respect that remand and find that this current appeal is not presently proper, but should Ms. Cleese-Wallace lose below and before the arbitrator, she could, in fact, come back to this Court and press some of these same arguments at that time. I'm a little confused as to what 2D is saying here. Could you help me understand that better? Because it doesn't, if I recall correctly, it doesn't just say when you have a sick child you have to provide medical documentation. It cross-references another document. That's right. Paragraph 2D incorporates four different articles of the collective bargaining agreement. And the one that is relevant here is, of course, in the agreement in the record, but it's also reproduced in the arbitrator's decision at the bottom of page 8 and over onto the top of page 9. And under this article, the operative provision for this case is E, which is on page 9 of the joint appendix. It says that as a, looking at the middle of the paragraph here, first sets forth a general rule that if you have sick leave for three days or less, you do not need to bring in a medical certificate, but there is an unless. Unless the employee has been warned in writing about an abuse or suspected abuse of sick leave and says an employee will not be issued a written warning unless he or she has first been counseled by his or her supervisor. And this is the language that the arbitrator was keying in on later at page 13 of the record and saying that there were some factual questions here that had been averted to, but not fully developed at the hearing and that the arbitrator is expecting will be developed by the agency. I think another important part of the context here... Whether she'd been properly warned, whether there was any kind of counseling requirement, whether that counseling had taken place so as to invoke this provision of the basic negotiated agreement. Wouldn't the last chance agreement be... That's certainly the agency's position. In addition, the actual leave request of December 6th, which is not in the appendix, but it is Exhibit K in the full record that was provided, had a handwritten request from the supervisor to provide supporting documentation. But there was some testimony by the union president that ordinarily what, in her experience, this refers to is a leave restriction. So as the arbitrator said, this was averted to, but not fully developed. One last contextual point that I'd like to make, if I may, is that it is important to keep in mind that this is ultimately both a last chance agreement and coming through the grievance process. And so I think it also makes sense here that the arbitrator remanded this, keeping in spirit with the nature of collective bargaining, to give the parties an opportunity to address these issues and see if they could resolve them. The briefs don't cite any cases that really are, I would say, on point. I think it's fair to say. You're not aware, and I couldn't, frankly, find anything that was close enough to this case to give me comfort one way or the other. Are you aware of any case that addresses the question of a remand in the context, as we've discussed it here, of a charge that is not sustained, but there's a related potential charge which a remand is sent back for? No, Your Honor. Either way, saying you can or you can't do it. Now, there are cases where the board... Even MSPB. I'm looking for any case. There are cases where the board clearly considered two things to be completely separate charges, which, again, we're saying that we don't believe the arbitrator considered it to be such here. In those cases, then the board has remanded. I mean, excuse me, has reversed. So GOES, which the union mentioned in argument, is one example. In that case, the agency had charged the appellant with violating a... Oh, I apologize. I see that I'm over time. No, you can continue to answer. In GOES, the agency charged the appellant with violating a provision that forbade drinking in public in uniform. And then for the first time... And this is another difference. Most of these cases, for the first time at the board, the agency said, oops, we meant some other charge. So that's another important distinction here, that we have this unique provision of the collective bargaining agreement that would have allowed some additional development of this issue before the agency. I'm sorry. I'm trying to understand what the scope of the issue is on the remand. Is the scope of the issue on the remand basically whether the last chance agreement satisfies the warning requirement? Is there anything more to it than that? No, it's restricted to whether this leave request on December 6th was properly charged by the agency as AWOL in breach of the agreement. I understand. But I'm trying to find out exactly what the issue is. Your contention is the last chance agreement qualifies as a warning, so 2D applies. Their position is that it doesn't. Is there anything more to it than that? That's right. I expect that the... Again, this is my hypothesis here, that the argument might make an argument as to whether there was proper counseling because the provision of the collective bargaining agreement also requires counseling before requiring this written documentation of leave. I believe they also made an argument at the hearing that the... My recollection is, at least in the red brief statement of the facts, you reference prior counseling, but apparently not as to this issue. Well, there was certainly counseling as to the leave issues in general. I don't know the answer about whether 2D was the subject of specific counseling. I expect the union might also, again, I don't know, have arguments along the lines of the supervisor did not consistently impose these requirements, and so that that might somehow... Too lax, and then decide to focus on this date was unfair in some way or violated some provision of the agreement. So there's still a number of things that can be developed on remand here. But to return, you cite the Gose case, and I guess there are others with disparate offenses involved. You don't know of any case, I take it, in which the position you are arguing for here was sustained. That is to say, if there are related charges, that they can be the subject of a remand when the second of the two charges was not part of the notice of removal. Again, not where it's a completely different charge. But even if they're closely related, do you know of any case in which, for example, the failure to cite the right regulation goes up to the MSPB, the MSP says, well, the government cited the wrong regulation, therefore we're throwing this out, but we're going to send it back for them to cite the right regulation and decide whether they remove the person. No reinstatement, no back pay. Any case like that? No, there are some where the board says... The board doesn't demand perfection in notices. So there have been cases where the board ultimately says, well, this wasn't a harmful error, everybody understood. And I think that even though the arbitrator made the ultimate finding here, that this was harmful, that by saying that factual issues had been raised and phrasing the issue as one broadly of breach and all of her other actions, retaining jurisdiction, those are all indications that she considered this to be sufficiently close, that it was part of the same charge. So it's sort of a sloppy charging, but sloppy charging doesn't necessarily mean you go back to square one with a reinstatement, et cetera. I think I'd agree with that, yes. Thank you. Okay, thank you, Ms. Kidmore. Ms. Johnhouse? Just briefly. Before you start on your rebuttal, could you state what you view the scope of the issues as being on the remand? The arbitrator's remand? Yeah. What do you think the issue is on the remand? To determine whether Paragraph 2D, the last chance agreement... I understand that, but what does that depend on? Does that depend on whether the last chance agreement constitutes a warning or what are the actual issues? I think that would involve, she would be entitled to a written warning, so did the last chance agreement equal that or was there some other warning and did she get the required counseling ahead of time? Okay. Go ahead. Just briefly, the counsel mentioned that maybe due process wasn't mentioned in the arbitrator's order. The arbitrator does cite the word constitutional and cites ward. The only constitutional provision in ward was due process, so I think that was clearly addressed by the arbitrator. She also said there are procedural problems because there are regulations requiring notice. I believe the agency counsel suggested that somehow we should have asked the deciding official to reconsider or revisit the issue once he made the mistake of saying, well, 2C wasn't violated but maybe 2D was, but I think the basic negotiating agreement on the page she cited says after a deciding official makes their decision, the next step is arbitration, so that's what we did. I just think this circles back to the key issue. The notice has to state the charges. When that's not done, the removal needs to be set aside. Okay. Well, let me ask one final question. Circling back to the finality issue, how would you distinguish this case and the class of cases in which this falls from a case in which one simply is arguing, well, it was inappropriate to remand on this case because I should have won. A district court case, let's say, in which one's argument is that the district court sent this back but there was really no need to given the state of the evidence. The district court sent it back to an agency, an APA type case. I think part of the issue is harm. Did the employee have the notice, have the chance to refute the charges? But with respect, that may go to the question of whether it was correct or not, but is there a category of remands that you would say that's not final where you think it was wrong to remand but you nonetheless say, yeah, but there's nothing we can do about it because it's not final. It was just a remand versus this case in which you're saying this was functus officio and therefore not something that the arbitrator had the power to remand and therefore what the arbitrator did was a final decision notwithstanding the arbitrator's statement to the contrary. I'm looking for a category, what you see as that category, which presumably is less than all remands. I'm not sure this answers your question, but I know we cited the AFG case in a footnote in our brief where sometimes arbitrators remand very ministerial matters like the details of the remedy and we are not taking issue with those. I'm not sure if that answers your question. Okay. Okay. Thank you, Ms. Charles. Thank both counsel and cases submitted. That concludes our session for today. All rise. The Honorable Court is adjourned from day to day.